UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

Ramon Morales and Tony A. Gerges,

Plaintiffs,

-against-

Fourth Avenue Bagel Boy, Inc. d/b/a Steve's Bagels and Steven
Natale,

Defendants.

-----------------------------------------------------------------------X

Civil Case No.:
18-cv-3734 (DLI)(TAM)

**DEFENDANT'S**
**DECLARATION**

## <u>DECLARATION OF WITHIN DEFENDANT, *PRO SE*, STEVEN NATALE</u>

To: The Honorable Dora Lizette Irizarry, District Court Judge:

I, Steven Natale, hereby declare the following, pursuant to 28 U.S.C. § 1746 (*see* oath at end of document), and upon personal knowledge, as well as upon information and belief, in addition to being fully familiar with the facts and circumstances set forth herein.

1.     I am one of the named defendants in the above-captioned case.

2.     I respectfully submit this Declaration to this Honorable Court as and for part of my objections to the Report and Recommendation of Magistrate Judge Taryn A. Merkl dated July 7, 2022 (R&R).

3.     For the most part, I am appearing in this case as a *pro se* litigant; however, solely for the purpose of this declaration, and my objections to the R&R, I have retained the services of, and received assistance from, attorney Anthony V. Gentile.

4.     In the R&R, I understand that Magistrate Merkl has recommended the following: (1) that my $1,000 settlement with Plaintiff Tony A. Gerges ("Plaintiff Gerges" or "Gerges") not be approved as fair and reasonable; (2) that Plaintiff Gerges be dismissed from the case; (3) that I be sanctioned in the form of an award of attorneys' fees and costs to Goldberg & Fliegel LLP, in an amount to be determined by Your Honor at the conclusion of the case; and (4) that Your Honor consider the imposition of a fine upon me as an additional sanction for my conduct.

5.     I further understand that the basis for the fine and sanction has something to do with my interactions with Gerges, although I do not fully understand all this, and it is not at all clear to me why it is being recommended that I be fined and sanctioned.

6.     In any event, I do not object to item (2) in paragraph four (4), above, that is, the dismissal of Gerges from this case. However, I do strenuously object to the remaining items for the reasons stated herein, and for the reasons stated in my attorney's accompanying objections.

**Facts about Myself**

7.     I am presently 56 years of age. I have only a seventh-grade education, having dropped out of public school in the eighth grade. I have worked as a cake baker/cook most of my life.

8.     I am presently not receiving any income, including not receiving any income from employment, and instead I am relying on meager support from relatives in the form of loans just to survive.  Last year, I collected unemployment benefits all year.

9.     Aside from some low-value articles of furniture in my apartment, I have no assets, things of value, or cash on hand.  I do, however, have debt in the amount of approximately $100,000.00 (mostly loans from family members and consumer credit debt).[1]

**My History with Plaintiff Gerges**

10.     I first met Plaintiff Gerges when he was 16 years of age and working at the flower shop next to my former bagel store.  I was approximately 40 years of age at the time.

11.     Gerges asked me if he, Gerges, could work at my former store.  I allowed him to work there part time, on and off, and took him "under my wing", so to speak, teaching him how to set up, cook, clean up afterwards, wait on customers, use the slicer, and other various tasks typical of a bagel store/delicatessen.

12.     We grow close to the point that he viewed me as a mentor, and he called me "Dad", even though I told him I disapproved of that because he had a father (although they did not get along).  At my family get-togethers he would come to my house to help prepare food, and he would sit down with us and break bread with us.

13.     I once drove him to a prestigious chef school so that he could apply for entry to the school.

---

[1] Had the settlement with Plaintiff Roman Morales been realized, I would have had to borrow that amount as well.

14.     Even with everything going on in this case, and throughout the case, Plaintiff Gerges kept in frequent contact with me, largely on a cordial basis, and he kept me apprised of his career paths, often seeking my advice on, and approval of, his employment choices, again, as if I am his father.  For example, as recently as Wednesday, July 13, 2022,[2] Gerges sent me a slew of photographs showing food he had prepared at his current place of employment.[3]

**Facts About Plaintiff Gerges, and his Sad and Tragic Descent**

15.     The young man I once took under my wing is far from the approximate 32-year-old man Gerges is today.  Based on his own accounts to me in the past few years, he has a serious drug (cocaine) and alcohol addiction problem, for which he has been in rehab.

16.     He has a serious mental illness, as evidenced by all of the following.  He tells me that the FBI has installed a chip in his head, and has put a tracking device on his car, so that the federal government can constantly monitor him and follow him.

17.     Indeed, Gerges showed me a letter dated <u>February 4, 2022</u> the FBI sent him whereby they advised him they would no longer accept his phone calls because he had made too many frivolous phone calls to that organization, and they directed him to stop placing such phone calls.[4]  He is so delusional that he has texted me stating that, notwithstanding this letter, the FBI has told him they want Gerges to come and work for them.

---

[2] I believe I may have mistakenly advised my attorney that these texts were sent on Sunday, July 17, 2022, and I apologize for any confusion this may have caused.
[3] I have saved these photographs, and sent some of them to my attorney, and we will gladly produce them if so requested by the Court or opposing counsel.
[4] The letter is attached hereto.

18. He advises me that he has terminal cancer of numerous organs, e.g., his kidneys, his pancreas, and his "stomach nerve", whatever that is. Upon information and believe, my opinion is that this is all a delusion and that he has no such ailments. He also says that certain doctors "mutilated" him, but I see no evidence of this.

## My Interactions with Gerges Regarding this Case

19. Around six (6) months ago, Gerges began contacting me directly, via phone and by coming to my house, and indirectly through an intermediary, all of which contacts had the same goal or theme. He essentially advised me that he wanted to settle the instant case.

20. His reasons were numerous. He wanted to try and maintain cordial relations with me and my family. He no longer liked or trusted his lawyer, and he felt that his lawyer was seeking to take all the money in the case. He had too much going on with his medical problems (and the FBI), and the case was preventing him from healing, and he just wanted it to be over.

21. He told me the case was seriously stressing him out, and that he was "on the brink". I took this to mean that he might have a mental breakdown, or perhaps do something drastic, such as hurt himself or others. I was also concerned he might abuse drugs and/or alcohol again to deal with the stress.

22. Eventually, on or around February 17, 2022, he travelled from Staten Island to my house in Brooklyn, and he pressured me into settling the case, not the other way around. Because

I was concerned for his mental health and overall well-being, and what he might do if the case did not settle, and because I just wanted this to be over for him, I obliged him, and settled the case.[5]

## I Should Not Be Sanctioned or Fined

23.     My attorney advises me that the reason the Magistrate is recommending a fine and a sanction (attorney fees) is because I settled the case with Gerges directly, instead of through his attorney.  I do not believe I should be sanctioned or fined on this basis.

24.     When Gerges began contacting me, as opposed to me reaching out to him, about settling this case, and he told me he was done with his attorney, I thought that this meant I could deal with him directly and resolve this matter, and I did not think I was doing anything wrong.

25.     My attorney advises me that that it would have been better if the Magistrate had told Gerges not to contact me either.  If the Magistrate had done that, then I would not have dealt with Gerges as I did, and I would have told the Court he was contacting me.

26.     I do regret that the Magistrate views me as someone who disregarded her and disrespected her.  Those were not my intentions and, again, I thought it would be a positive thing for everyone concerned, and especially Gerges, if this case were to end.

27.     I can assure this Court that I will not repeat this conduct.  In fact, my attorney has spent quite some time (beyond what I retained him for) advising me how to conduct myself better before the Court, and I intend to do my best to follow his sound advice.

_____

[5] I had to borrow the money to do so and, if I settle the case with the other Plaintiff, I will have to borrow the money to do that as well.

Wherefore, for all the foregoing reasons, and those set forth in my attorney's accompanying objections, I ask that item (2) of the R&R be adopted, and that the remainder of the R&R be rejected in its entirety, with prejudice.

### **Oath**

I hereby declare under penalties of perjury; under the laws of the United States; and under any applicable rules of this Court, that the foregoing statements are true and correct to the best of my knowledge.

Executed this 4th day of August, 2022
in New York, N.Y.

Steven Natale

February 4, 2022

Tony Gerges
457 Clifton Ave
Staten Island NY 10305-1623

Dear Tony Gerges:

The Federal Bureau of Investigation's (FBI's) National Threat Operations Center (NTOC) is reserved for official FBI business related to criminal activity within federal jurisdiction or threats to national security. A review of your call history indicates you have excessively called NTOC and have not provided such information. Due to the excessive number of calls with no lead value, NTOC will no longer accept calls from you. You have received verbal warnings to stop calling NTOC for a purpose other than reporting information to the FBI regarding suspected criminal activity or threats to national security, and have continued to call; therefore, occupying resources that could be used for their intended purpose of providing valuable tips to FBI field offices. You still have the ability to call 911 or local law enforcement in case of emergency.

Sincerely yours,

Giget M. Kuroski