UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------X

RAMON MORALES,

                    Plaintiff,

        -against-

FOURTH AVENUE BAGEL BOY, INC.,
d/b/a STEVE'S BAGELS, and STEVEN
NATALE,

                    Defendants.

----------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
18-CV-3734 (DLI) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

       Plaintiff Ramon Morales initiated this action on June 28, 2018, against Defendants

Fourth Avenue Bagel Boy, Inc. ("Bagel Boy"), doing business as Steve's Bagels, and

Steven Natale, alleging, *inter alia*, claims for unpaid wages under the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"),

Art. 6 § 190 *et seq.* and Art. 19 § 650 *et seq.* (*See generally* Compl., ECF No. 1.) The parties

reached a settlement in principle on July 6, 2023, and, on July 26, 2023, moved for

approval of their settlement agreement under *Cheeks v. Freeport Pancake House, Inc.*, 796

F.3d 199 (2d Cir. 2015). (July 6, 2023 ECF Min. Entry & Order; Mot. for Settlement

Approval, ECF No. 107.) On July 27, 2023, the Honorable Dora Lizette Irizarry referred

the parties' motion to the undersigned Magistrate Judge for a report and

recommendation. (July 27, 2023 ECF Referral Order.) For the reasons set forth below,

the Court finds that the settlement is fair and reasonable and therefore respectfully

recommends approval under *Cheeks*.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

As alleged in the complaint, Defendant Bagel Boy is a New York corporation that operated a bagel shop in Brooklyn, New York. (Compl., ECF No. 1, ¶ 5, 6.) Defendant Natale was an alleged officer and owner of Bagel Boy throughout Plaintiffs' employment. (*Id.* ¶ 7.) Plaintiff Ramon Morales alleges that he worked for Defendants "for more than 10 years, until about mid-July 2016." (*Id.* ¶ 12.)

Plaintiff Morales filed suit on June 28, 2018, along with former Plaintiff Tony A. Gerges, who alleged that he too had worked for Defendants for over 10 years. (*Id.* ¶ 24.) After Defendants initially failed to respond to the complaint, Plaintiffs requested a certificate of default on August 6, 2018, which the Clerk of Court issued on August 16, 2018, but only as to Defendant Natale. (Reqs. for Certificates of Default, ECF Nos. 9, 10; Entry of Default, ECF No. 11; *see also* Req. for Certificate of Default, ECF No. 13; Sept. 10, 2018 ECF Clerk's Entry; Req. for Certificate of Default, ECF No. 15.) Defendants subsequently filed an answer on October 4, 2018. (Answer, ECF No. 18.)

The parties appeared for a conference before Magistrate Judge Vera M. Scanlon on October 25, 2018, during which Judge Scanlon directed the parties to conduct discovery regarding whether Bagel Boy met the $500,000 threshold. (Oct. 25, 2018 ECF Scheduling Order.) Plaintiffs served discovery requests regarding the issue on November 16, 2018, and, after Defendants failed to respond, Plaintiffs' counsel sent defense counsel a follow-up email on December 20, 2018, to which defense counsel also failed to respond. (Mot. to Strike, ECF No. 22, at ECF pp. 1, 5, 6.) At a status conference on January 4, 2019, Judge Scanlon directed Defendants to respond to Plaintiffs' pending discovery requests by February 15, 2019. (R. of Conf & Order, ECF No. 21, at 2.) Again, however, Defendants failed to respond, and on February 27, 2019, Plaintiffs moved to strike Defendants' answer as a discovery sanction. (Mot. to Strike, ECF No. 22.)

Judge Scanlon denied Plaintiffs' motion during a status conference on April 9, 2019, and ordered the parties to engage in discovery. (Apr. 9, 2019 ECF Order Denying Mot. to Strike & Scheduling Order.) Defendants failed to exchange their initial disclosures as directed, and Plaintiffs again moved to strike Defendants' answer as a sanction, this time on May 7, 2019. (Mot. to Strike, ECF No. 25, at 1, 3.) Approximately one month later, on June 11, 2019, defense counsel filed a letter indicating that he had "been officially discharged by [his] client" and that he intended to withdraw as counsel. (Notice of Withdrawal, ECF No. 27, at 1.) At another status conference on June 20, 2019, Judge Scanlon denied Plaintiffs' second motion to strike, granted defense counsel leave to withdraw, and directed Defendants to respond to Plaintiffs' pending discovery requests by August 23, 2019. (June 20, 2019 ECF Order.) Judge Scanlon also advised Natale that, while he could proceed *pro se* in this matter, Bagel Boy could not; accordingly, Defendants were directed to find new counsel by July 22, 2019. (*See* July 23, 2019 ECF Order (discussing June 20, 2019 conference).) On July 30, 2019, after no new counsel entered an appearance for Defendants, Plaintiffs again requested a certificate of default as to Bagel Boy, which the Clerk of Court issued on August 8, 2019. (Req. for Certificate of Default, ECF No. 29; Clerk's Entry of Default, ECF No. 30.)

Following several requested adjournments, the parties next appeared for a telephonic status conference on December 20, 2019. (*See* Mots. to Adjourn, ECF Nos. 34, 35, 37; Dec. 20, 2019 ECF Min. Entry.) Judge Scanlon directed the parties to meet and confer regarding discovery and settlement possibilities by January 31, 2020. (Dec. 20, 2019 ECF Scheduling Order.) The next status conference was adjourned until May 12, 2020. (Mar. 5, 2020 ECF Order.) In her order scheduling the conference, Judge Scanlon noted the lack of progress on discovery, Defendants' failure to obtain new counsel, and advised Defendants that, "[s]hould [they] fail to appear at the [May 12, 2020] conference

or otherwise fail to participate in this lawsuit, [the] Court may permit Plaintiffs to move for default judgment." (*Id.*)

Citing health concerns, Natale requested an adjournment, and Judge Scanlon eventually rescheduled the conference for July 16, 2020. (Mot. to Adjourn, ECF No. 42; May 18, 2020 ECF Rescheduling Order.) In her May 18, 2020 rescheduling order, Judge Scanlon directed Natale to arrange for an authorized representative or representation by an attorney, noting also that Natale's "health issues ha[d] delayed this case by more than a year, a delay which at some point [could] be deemed to be prejudicial to the other side." (May 18, 2020 ECF Rescheduling Order.) The parties appeared for the July 16, 2020 status conference, during which Judge Scanlon directed Natale to provide witness information to Plaintiffs, scheduled party depositions, and set another status conference for September 16, 2020. (July 16, 2020 ECF Min. Entry; July 16, 2020 Scheduling Order.) Judge Scanlon subsequently held the September 16, 2020 status conference, as well as additional status conferences on November 4, 2020 (which Plaintiffs' counsel failed to attend), and on November 24, 2020 (which Natale failed to attend). (Sept. 16, 2020 ECF Min. Entry; Nov. 4, 2020 ECF Min. Entry; Nov. 24, 2020 ECF Min. Entry.)

On December 8, 2020, Plaintiffs again moved to strike Defendants' answer, this time as a sanction for purportedly making misrepresentations to Judge Scanlon during the November 4, 2020 status conference. (Mot. to Strike, ECF No. 50, at 1, 3.) In the meantime, Plaintiffs had also moved for a default judgment against Bagel Boy on July 24, 2020, which Judge Irizarry referred to Judge Scanlon on July 27, 2020. (Mot. for Default J., ECF No. 44; July 27, 2020 ECF Order.) In a report and recommendation issued on February 12, 2021, Judge Scanlon recommended denying Plaintiffs' motion for default judgment. (R. & R., ECF No. 57, at 2.) Judge Irizarry adopted Judge Scanlon's

report and recommendation on March 2, 2021. (Mar. 2, 2021 ECF Order Adopting R. & R. & Denying Mot. for Default J.)

This case was reassigned to the undersigned Magistrate Judge on June 8, 2021. (June 8, 2021 ECF Notice.) The parties then appeared for a status conference on July 29, 2021, during which they discussed their settlement efforts, and the Court scheduled a settlement conference. (July 29, 2021 ECF Min. Entry & Order.) Shortly thereafter, on August 13, 2021, counsel for Defendants entered a notice of appearance, purportedly "for the limited purpose of representation in a mediation." (Notice of Appearance, ECF No. 63.) Accordingly, the Court scheduled another conference for September 29, 2021, prior to the previously scheduled settlement conference, during which the Court adjourned the settlement conference and referred this case to mediation. (Aug. 16, 2021 ECF Scheduling Order; Sept. 29, 2021 ECF Min. Entry & Order.)

Plaintiffs filed a post-mediation status report on December 7, 2021, advising the Court that the parties had failed to reach a settlement at mediation. (Pls.' Status Rep., ECF No. 64.) At a status conference on January 25, 2022, the Court granted defense counsel's motion to withdraw, on consent of Natale. (Jan. 25, 2022 ECF Min. Entry & Order.) The Court reminded Natale that Bagel Boy could not proceed *pro se*, and that, for the purposes of this case, Natale was to communicate with Plaintiffs exclusively through their attorney. (*Id.*) The Court also directed Plaintiffs' counsel to communicate Natale's most recent settlement offer to Plaintiffs. (*Id.*)

Plaintiffs filed a letter on February 8, 2022, indicating that Plaintiff Morales had rejected Natale's settlement offer, but that Plaintiff Gerges had accepted. (Pls.' Letter, ECF No. 65.) The letter further stated, however, that despite Gerges's acceptance, Natale had directly communicated with Gerges "regarding a substantially lower settlement amount, without [counsel's] knowledge, until after the fact." (*Id.*) Natale filed a letter of

5

his own on February 17, 2022, wherein he indicated that Gerges himself had contacted Natale about a lower settlement amount. (Def. Natale's Letter, ECF No. 66.) Natale subsequently filed another letter, dated March 21, 2022, requesting that "Gerges [be] removed from this case." (Def. Natale's Letter, ECF No. 67, at 2.) Enclosed with Natale's March 21, 2022 letter was a February 16, 2022 letter from Gerges addressed to Plaintiffs' counsel. (*Id.* at 1.) Gerges's letter purportedly relieved counsel of representing him on account of a settlement reached with Natale, for an amount substantially less than the offer described in Plaintiffs' February 8, 2022 letter. (*Id.*)

On March 29, 2022, Judge Irizarry entered an order construing the March 21, 2022 letters "as a motion for settlement approval and motion to relieve counsel," and referring these motions to the undersigned for a report and recommendation. (Mar. 29, 2022 ECF Order.) The Court subsequently held a status conference on April 8, 2022, during which the Court again instructed Natale that he was to communicate exclusively with Plaintiffs' counsel regarding this case. (Apr. 8, 2022 ECF Min. Entry & Order.) The Court then scheduled another status conference, this time for April 28, 2022, directing the parties to submit a proposed settlement agreement for review under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), and instructing Gerges and Natale to personally attend the conference. (*Id.*) Despite this instruction, Gerges did not appear for the April 28, 2022 conference; neither did he attend the next status conference held on May 19, 2022 — again, contrary to the Court's order, and despite attempts by counsel and the Court to notify Gerges of the conference. (Apr. 28, 2022 ECF Min. Entry & Order; May 19, 2022 ECF Min. Entry & Order.)

The Court issued a report and recommendation on July 7, 2022, recommending that:

(1) Defendant Steven Natale's $1,000 settlement with Plaintiff Gerges not be approved as fair and reasonable; (2) Plaintiff Gerges be dismissed from the case notwithstanding the impropriety of Defendant Natale's attempt to settle Mr. Gerges's claims; (3) Defendant Natale be sanctioned in the form of an award of attorneys' fees and costs to [Plaintiffs' counsel], in an amount to be determined by the District Court at the conclusion of the case; and (4) the District Court consider the imposition of a fine on Defendant Natale as an additional sanction for his conduct.

(R. & R., ECF No. 77, at 20.) On July 21, 2022, the last day to object to the report and recommendation, new counsel entered a notice of appearance on behalf of Defendants. (*See* July 7, 2022 ECF Entry (noting that objections to the report and recommendation would be due by July 21, 2022); Notice of Appearance, ECF No. 80.) That same day, Defendants requested an extension of time to file objections and, notwithstanding that no extension had been granted, filed objections on August 4, 2022. (Mot. for Extension of Time, ECF No. 81; Defs.' Obj. to R. & R., ECF No. 85.)

On August 5, 2022, Plaintiffs moved to strike Defendants' objections as untimely, which motion Judge Irizarry granted on September 30, 2022. (Mot. to Strike, ECF No. 86; Sept. 30, 2022 ECF Order.) Judge Irizarry also adopted the report and recommendation "in its entirety." (Sept. 30, 2022 ECF Order Adopting R. & R.) Specifically, Judge Irizarry dismissed Gerges as a party in this action, concluded that attorneys' fees should be awarded as a sanction against Natale, and, as an additional sanction, fined Natale $10,000. (*Id.*)

The parties next appeared for a conference on June 27, 2023, before Judge Irizarry and the undersigned Magistrate Judge. (*See* June 27, 2023 ECF Min. Entry.) At the conference, defense counsel moved to withdraw and Judge Irizarry granted his request. (*Id.*) A settlement conference was scheduled for July 6, 2023, before the undersigned. (*Id.*) The parties also discussed the representations made in Plaintiff Morales's latest motion for sanctions, filed on June 20, 2023, wherein Morales indicated that, on June 6,

2023, "Mr. Natale had initiated direct contact with Plaintiff Morales . . . to discuss terms for settlement." (Mot. for Sanctions, ECF No. 101, at 1; *see* June 27, 2023 ECF Min. Entry.) In light of the scheduled settlement conference, Judge Irizarry held Plaintiff's motion in abeyance. (June 27, 2023 ECF Min. Entry.)

After extensive negotiations facilitated by the Court, the parties reached a settlement in principle at the July 6, 2023 conference. (July 6, 2023 ECF Min. Entry & Order.) Accordingly, the Court directed the parties to file their proposed settlement agreement for *Cheeks* review, by July 20, 2023. (*Id.*) The Court also indicated in its minute entry and order that, in light of the parties' settlement, the Court "respectfully recommends to the Honorable Dora L. Irizarry that the fine ordered against Mr. Natale on [September 30, 2022] be reduced or reconsidered." (*Id.*)

Following a brief extension, the parties filed their proposed settlement agreement on July 26, 2023. (Mot. for Extension of Time, ECF No. 106; Mot. for Settlement Approval, ECF No. 107.) Judge Irizarry then referred the matter to the undersigned Magistrate Judge on July 27, 2023, to review the parties' proposed settlement under *Cheeks* and to issue a report and recommendation. (July 27, 2023 ECF Order Referring Mot.) On September 7, 2023, the Court ordered Plaintiffs' counsel to file a supplemental submission with "contemporaneous billing records, receipts, or other materials substantiating the amount of attorneys' fees and costs" to support the expenses claimed in the proposed settlement. (Sept. 7, 2023 ECF Order.) Counsel filed a supplemental submission on September 21, 2023. (Reply in Supp. of Mot. for Settlement, ECF No. 108 (hereinafter "Supplemental Submission").)

## DISCUSSION

Plaintiff Morales (referred to from herein as "Plaintiff") now requests approval under *Cheeks* of a proposed settlement agreement between him and Defendants. For the

8

following reasons, the Court finds that the proposed settlement is fair and reasonable. The Court therefore respectfully recommends approving the proposed settlement and dismissing this case with prejudice.

## I.  Legal Standards

The Second Circuit "has held that parties cannot privately settle FLSA claims . . . absent the approval of the district court or the Department of Labor." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 599 (2d Cir. 2020) (citing *Cheeks*, 796 F.3d at 200). "In considering whether to approve an FLSA settlement, courts consider whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Rotthoff v. N.Y. State Cath. Health Plan, Inc.*, No. 19-CV-4027 (AMD) (CLP), 2021 WL 1310220, at *2 (E.D.N.Y. Apr. 8, 2021) (quotation marks omitted); *see also Cheeks*, 796 F.3d at 206 ("Examining the basis on which district courts recently rejected several proposed FLSA settlements highlights the potential for abuse in such settlements, and underscores why judicial approval in the FLSA setting is necessary."). Courts typically evaluate the following factors when determining whether a proposed FLSA settlement is fair and reasonable:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quotation marks omitted); *see also Fisher*, 948 F.3d at 600 (citing the *Wolinsky* factors). "In addition, if attorneys' fees and costs are provided for in the settlement, district courts will also evaluate the reasonableness of the fees and costs." *Id.* at 600.

9

If a court finds that a "proposed settlement is unreasonable in whole or in part, the court . . . must reject the agreement or give the parties an opportunity to revise it." *Id.* at 605. The court "cannot simply rewrite the agreement." *Id.* Accordingly, "[w]hen presented with a settlement for approval, a district court's options are to (1) accept the proposed settlement; (2) reject the proposed settlement and delay proceedings to see if a different settlement can be achieved; or (3) proceed with litigation." *Id.* at 606 (citing *Evans v. Jeff D.*, 475 U.S. 717, 727 (1986)).

## II. Settlement Agreement

Analyzing the settlement agreement against the *Wolinsky* factors, the Court finds that the amount and terms of the settlement are fair and reasonable. As a threshold matter, the settlement amount exceeds Plaintiff Morales's estimated wage deficiency amount. (*See* Supplemental Submission, ECF No. 108, at 3.) Considering the terms of the agreement; the protracted and arduous litigation history of this case; the lengthy settlement negotiations; and the possible litigation risks, which could ultimately limit the range of Plaintiff's possible recovery, the Court concludes, on balance, that the proposed settlement "'reflects a reasonable compromise of disputed issues.'" *Rotthoff*, 2021 WL 1310220, at *2 (quoting *Le v. Sita Info. Networking Computing USA, Inc.*, No. 07-CV-86, 2008 WL 9398950, at *1 (E.D.N.Y. June 12, 2008)).

### A. Settlement Amount and *Wolinsky* Factors

#### 1. *The Plaintiff's Range of Possible Recovery*

Beginning with Plaintiff's range of possible recovery, the Court is satisfied that the proposed settlement amount adequately compensates Plaintiff on his wage deficiency claim. The agreement proposes a total settlement of $65,000 — $33,000 of which will go to Plaintiff Morales himself, and the remaining $32,000 to cover attorney's

fees and costs. (Mot. for Settlement Ex. 1, ECF No. 107, at ECF p. 6 (hereinafter "Proposed Settlement").)

Plaintiff "estimates that his damages for unpaid overtime wages is $40,300." (Mot. for Settlement, ECF No. 107, at 3.) This estimate is consistent with the Court's independent calculation of the wage deficiency based on the allegations in the complaint, motion for settlement, and Supplemental Submission. (*See* Compl., ECF No. 1, ¶¶ 12–23; Mot. for Settlement, ECF No. 107, at 2; Supplemental Submission, ECF No. 108, at 2–3.) Plaintiff's portion of the $65,000 settlement amount, $33,000, represents approximately 81% of Plaintiff's best-day-in-court recovery in this action. Accordingly, the Court finds that the settlement amount is reasonable, given the range of possible recovery. *See, e.g.*, *Sicajan Diaz v. Pizza Napolitana, Inc.*, No. 19-CV-4911 (EK) (RML), 2020 WL 8265766, at *2 (E.D.N.Y. Dec. 4, 2020) (approving a settlement agreement representing 20.8% of the plaintiff's total alleged damages), *report and recommendation adopted*, 2021 WL 260093 (E.D.N.Y. Jan. 26, 2021); *Redwood v. Cassway Contracting Corp.*, No. 16-CV-3502 (HBP), 2017 WL 4764486, at *2 (S.D.N.Y. Oct. 18, 2017) (finding that 29.1% of total alleged damages was reasonable); *Lee v. Samiti Tech. Inc.*, No. 21-CV-1032 (CBA) (TAM), 2021 WL 7906558, at *4 (E.D.N.Y. Sept. 8, 2021) (approving a settlement agreement representing approximately 14.3% of plaintiff's total alleged damages), *report and recommendation adopted*, Nov. 3, 2023 ECF Order Adopting R. & R.

2. *Avoiding Anticipated Burdens and Expenses & Litigation Risks*

The Court also finds that the proposed settlement will avoid additional expenses and costs to the parties, and that the litigation risks Plaintiff faces are substantial. *See Castillo v. Cranes Express Inc.*, No. 18-CV-1271 (PKC) (LB), 2018 WL 7681356, at *2 (E.D.N.Y. Dec. 12, 2018) (approving settlement amount where "[t]he settlement provides plaintiff with certainty regarding what he will recover from defendants and

avoids the time and expense of litigation"). The parties continue to dispute whether all necessary discovery has taken place. The Court notes also that Natale is self-represented in this action; this at least complicates the parties' ability to resolve any remaining disputes, to prepare the case for trial, and to conduct the trial itself. Apart from the expenses of trial, Plaintiff points to the financial hardship alleged by Natale, noting that, even assuming a favorable verdict, "Morales could face various difficulties in seeking to enforce a judgment against Defendants."[1] (Mot. for Settlement, ECF No. 107, at 3.) The Court therefore finds that settlement is prudent at this time, as it will help the parties avoid additional expenses, delays, and risks of this already protracted litigation. *See Sicajan Diaz*, 2020 WL 8265766, at *2 (recommending settlement approval where the settlement "allow[ed] both parties to expedite the resolution of [the] matter and avoid costly motion practice").

3. *Arm's-Length Bargaining and Possibility of Fraud or Collusion*

The record amply demonstrates that the settlement agreement was the product of arm's-length bargaining. After five years of litigation, a settlement in principle was finally reached as a result of a settlement conference conducted by the Court on July 6, 2023. (July 6, 2023 ECF Min. Entry & Order.) Based on the Court's discussions with each party, settlement efforts were hard fought, and there is no evidence to suggest that the parties' agreement was the product of fraud or collusion. For all these reasons, the Court finds that the proposed settlement is fair and reasonable.

---

[1] The Court also notes that because Natale is no longer operating Bagel Boy, Plaintiff's prospect for recovery absent a settlement may be low. *See* Entity Information, Department of State Division of Corporations (noting that entity Fourth Avenue Bagel Boy, Inc. was voluntarily dissolved on September 27, 2021).

### B. Settlement Agreement Terms

The terms of the parties' settlement agreement further demonstrate that the proposed settlement is the product of arm's-length bargaining between the parties. (Proposed Settlement, ECF No. 107.) The agreement does not include the types of problematic provisions that run afoul of the FLSA's remedial purposes, such as an impermissible confidentiality clause or overly broad release. *See Rotthoff*, 2021 WL 1310220, at *2; *Burgos v. Ne. Logistics, Inc.*, No. 15-CV-6840 (CBA) (CLP), 2018 WL 2376481, at *4 (E.D.N.Y. Apr. 26, 2018), *report and recommendation adopted*, 2018 WL 2376300 (E.D.N.Y. May 24, 2018). In addition, although the agreement contains a release of Plaintiff's claims, the release is confined to "the claims asserted by [Plaintiff] against Defendants in this [l]awsuit." (Proposed Settlement, ECF No. 107, at ECF p. 6.) Such a narrow release is appropriate in this context and should be approved. *See Seecharan v. Heritage Place LLC*, No. 20-CV-3898 (WFK) (LB), 2021 WL 1299692, at *4 (E.D.N.Y. Mar. 15, 2021), *report and recommendation adopted*, 2021 WL 1299436 (E.D.N.Y. Apr. 7, 2021); *Zavala Artiega v. Griffin Organics, Inc.*, No. 16-CV-6613 (AEK), 2021 WL 1997636, at *5 (S.D.N.Y. May 19, 2021).

## III. Attorneys' Fees and Costs

When attorneys' fees are included as part of a settlement agreement, courts are required to "evaluate the reasonableness of the fees and costs." *Fisher*, 948 F.3d at 600 (citing *Cheeks*, 796 F.3d at 206; 29 U.S.C. § 216(b)); *see also Wolinsky*, 900 F. Supp. 2d at 336 ("[T]he Court must carefully scrutinize the settlement and the circumstances in which it was reached, if only to ensure that the interest of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." (alterations in original) (quotation marks omitted)).

13

Courts in the Second Circuit generally "calculate a reasonable fee using either the 'lodestar' method or the 'percentage of the fund' method." *See, e.g.*, *Valencia v. Nassau Country Club*, No. 18-CV-2724 (LDH) (JO), 2020 WL 7249440, at *1 (E.D.N.Y. Oct. 19, 2020) (citing *McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010)), *report and recommendation adopted*, No. 18-CV-2724 (LDH) (VMS), 2020 WL 6867911 (E.D.N.Y. Nov. 23, 2020). "Either way, the court must consider the 'traditional criteria' for fee applications," including: "the time and labor expended by counsel; the magnitude and complexities of the litigation; the risk of the litigation; the quality of representation; the requested fee in relation to the settlement; and public policy considerations." *Id.* (citing, *inter alia*, *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)). In addition, "in an individual FLSA action in which the parties settle the fee through negotiation, the 'range of reasonableness' for attorneys' fees is greater than in a collective or class action." *Perez-Ramos v. St. George Holding Corp.*, No. 18-CV-1929 (KAM) (JO), 2020 WL 415818, at *3 (E.D.N.Y. Jan. 27, 2020) (quoting *Wolinsky*, 900 F. Supp. 2d at 336).

### A. Percentage of the Fund Method

Under the "percentage of the fund" method, many courts find that "a one-third contingency fee is generally considered reasonable in this Circuit." *Castillo*, 2018 WL 7681356, at *4; *see also Sicajan Diaz*, 2020 WL 8265766, at *4. However, as discussed below, there is no "proportionality limit on recoverable attorneys' fees." *Fisher*, 948 F.3d at 603.

In the FLSA context, the Second Circuit has observed that the primary goal of the statute's fee shifting provision is to provide compensation for counsel sufficient to ensure that plaintiffs in "run of the mill" FLSA actions are not left without legal recourse. *Fisher*, 948 F.3d at 603–04. Finding that a district court's modification of the settlement agreement and reduction of the fee in an FLSA case was an abuse of

14

discretion, the *Fisher* court observed that "[i]n most FLSA cases, it does not make sense to limit fees to 33% of the total settlement," and that "[n]either the text nor the purpose of the FLSA . . . supports imposing a proportionality limit on recoverable attorneys' fees." *Id.* at 603. Such an approach would be "inconsistent with the remedial goals of the FLSA," which is a "'uniquely protective statute.'" *Id.* (quoting *Cheeks*, 796 F.3d at 207). Accordingly, the Second Circuit emphasized that "a fee may not be reduced merely because the fee would be 'disproportionate to the financial interest at stake in the litigation.'" *Fisher*, 948 F.3d at 604 (quoting *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005)).

Here, Mr. Goldberg requests $32,000 in attorneys' fees and costs, or approximately 49% of the total settlement amount of $65,000. (Mot. for Settlement, ECF No. 107, at 2.) At first blush, a fee award of nearly one-half of the settlement could appear unreasonably disproportionate in light of the one-third generally considered reasonable in this Circuit. *Cf. Castillo*, 2018 WL 7681356, at *4 (noting that a "one-third attorney's fee arrangement is routinely approved by the courts in this Circuit"). However, given the circumstances of this case and the policy considerations underlying the FLSA, the Court respectfully recommends that a proportionality limit on Mr. Goldberg's recoverable attorneys' fees should not be imposed, for the reasons discussed below.

1. *Plaintiff Gerges's Settlement*

As an initial matter, the Court finds that the unique procedural history of this litigation renders the percentage of the fund analysis quite misleading. This case has been pending for over five years and originally involved two plaintiffs, as detailed above. In addition, the settlement presently under review does not reflect an appropriate settlement amount for Plaintiff Gerges, with whom Natale settled out of

15

court for an amount and under circumstances that the Court previously found

unreasonable. (R. & R., ECF No. 77, at 8 ("[T]he Court respectfully recommends that

Defendant Natale's apparent $1,000 payment to Plaintiff Gerges not be approved as a

fair and reasonable settlement . . . .").) Now, as part of his request for attorneys' fees,

Mr. Goldberg includes some fees attributed to his representation of Gerges. Specifically,

$10,000 of the $32,000 Mr. Goldberg requests is allocated "to settle th[e] Firm's separate

and additional claim against Mr. Natale for attorneys' fees and costs relating to the

Firm's representation of former Plaintiff Mr. Gerges." (Supplemental Submission, ECF

No. 108, at 2.)

Mr. Goldberg's present request for these fees is justified by Natale's

inappropriate, obstructive behavior. Because Natale unduly pressured Gerges to accept

an out-of-court settlement, there was no proposed settlement for the Court to review;

the Court therefore recommended that the proposed settlement not be approved as fair

and reasonable. (R. & R., ECF No. 77, at 9–11.) However, in light of Mr. Goldberg's

work on the case, the Court recommended that the District Court "consider the

imposition of a fine on Mr. Natale" and award Mr. Goldberg's firm "attorneys' fees and

costs for his representation of Mr. Gerges, *to be assessed at the conclusion of this case*."[2] (*Id.*

at 8 (emphasis added).) Adopting the Court's report and recommendation, Judge

Irizarry already decided to award Plaintiff's counsel "attorneys' fees and costs as a

---

[2] The Court notes that Mr. Goldberg appears to conflate the $10,000 Judge Irizarry fined Natale as a sanction with the attorneys' fees she awarded as a sanction against Natale. As Judge Irizarry's order makes clear, "the amount [of fees was] to be determined at the conclusion of the litigation and on submission of documentation." (Sept. 30, 2022 ECF Order Adopting R. & R.) Further, Mr. Goldberg suggests, without any record support, that "THE $10,000 ALLOCATED TO THE GERGES FEE . . . WAS DISCUSSED WITH THE MAGISTRATE IN JULY 2023." (Supplemental Submission, ECF No. 108, at 5 (emphasis in original).) Mr. Goldberg was specifically advised that any fee application would need to be documented. (*See* Sept. 30, 2022 ECF Order Adopting R. & R.)

sanction imposed pursuant to the Court's inherent authority for willful disobedience of court orders." (Sept. 30, 2022 ECF Order Adopting R. & R.) Now, at the conclusion of the case, Mr. Goldberg requests fees for his representation of both Gerges and Morales. Moreover, as discussed further *infra*, Mr. Goldberg expended numerous hours representing Plaintiff Gerges for which he should be compensated notwithstanding Natale's unapproved settlement with Gerges.

   2.  *FLSA Policy*

   The Court also recommends declining to impose a proportionality requirement in this case because doing so would be antithetical to the policy considerations underlying the FLSA. This case is no different from *Shuler v. Liberty Consulting Servs., Ltd.*, No. 20-CV-5779 (KAM) (CLP), 2022 WL 1552039, at *12 (E.D.N.Y. Apr. 4, 2022), where the defendant paid the plaintiff $4,000 "in exchange for plaintiff's agreement to dismiss the case, despite the fact that plaintiff's claims in the action likely exceeded that amount." In *Shuler*, the court held that the Defendant "clearly violated *Cheeks* when it entered into th[e] purported 'settlement' without first obtaining court approval," and that such "active avoidance of responsibility is what *Cheeks* sought to prevent." 2022 WL 1552039, at *14. As a remedy, the Court recommended that the defendant "be required to pay plaintiff's counsel's fees . . . with the amount to be determined by a later accounting as a sanction for defendant's conduct in attempting to settle th[e] case in contravention of *Cheeks*." *Id.*

   The Court recommends adopting the same approach here. To impose a proportionality requirement on Mr. Goldberg's fees would effectively punish him for his continuous and unwavering advocacy of both Plaintiffs in the face of Natale's obstructive and inappropriate actions, which were taken in bad faith. (*See* R. & R., ECF No. 77, at 17 ("[T]he undersigned finds that Defendant Natale violated the Court's

orders in an apparent effort to interfere with the litigation and settlement process, and that he took such actions in bad faith.").) Moreover, "[a]llowing this type of conduct to continue without some sanction would 'permit defendants to circumvent the FLSA's "deterrent effect" and eviscerate FLSA protections.'" *Shuler*, 2022 WL 1552039, at *14 (quoting *Armenta v. Dirty Bird Grp., LLC*, No. 13-CV-4603, 2014 WL 334428, at *4 (S.D.N.Y. June 27, 2014)). Indeed, imposing a proportionality requirement would implicitly endorse the notion that by intimidating and harassing plaintiffs to settle outside of court, defendants can reduce the overall settlement and thus avoid paying higher attorneys' fees. The Court declines to punish Mr. Goldberg for the consequences of Natale's bad faith actions.

Although the Court does not find Mr. Goldberg's calculation of his attorneys' fees entirely supportable as discussed *infra*, the Court does not recommend imposing a proportionality limit on his fees based on a percentage of the fund analysis.

### B. Lodestar Method

A "lodestar check" is another mechanism for courts in this circuit to "review the reasonableness of an attorney's requested fee." *Rosario v. EMZ Sols. LLC*, No. 18-CV-3297 (RPK) (CLP), 2020 WL 8413532, at *8 (E.D.N.Y. Aug. 7, 2020), *report and recommendation adopted*, 2020 WL 7777955 (E.D.N.Y. Dec. 31, 2020). Courts employing the "lodestar" method multiply "the number of hours reasonably spent by counsel on the matter by a reasonable hourly rate." *Rotthoff*, 2021 WL 1310220, at *3. Courts in this circuit determine a reasonable hourly rate "us[ing] the prevailing hourly rates in the district in which they sit." *E.g.*, *Cortes v. Juquila Mexican Cuisine Corp.*, No. 17-CV-3942 (RER), 2021 WL 1193144, at *2 (E.D.N.Y. Mar. 29, 2021). Where, as here, "the lodestar is being used merely as a cross-check, it is unnecessary for the Court to delve into each hour of work that was performed by counsel to ascertain whether the number of hours

reportedly expended was reasonable." *Meo v. Lane Bryant, Inc.*, No. 18-CV-6360 (AKT), 2020 WL 4047897, at *2 (E.D.N.Y. July 17, 2020) (quotation marks omitted).

1. *Reasonable Hourly Rate*

As mentioned *supra*, of the $65,000 settlement amount, $32,000 is to be paid to Plaintiff's counsel in the form of attorneys' fees — $22,000 for the ordinary fees and costs of representation, and $10,000 "for the . . . [September 30, 2022] Award of attorneys' fees." (Proposed Settlement, ECF No. 107, at ECF p. 6 (citing Sept. 30, 2022 ECF Order Adopting R. & R.).) Counsel indicates that his costs amounted to $1,867.20,[3] (Supplemental Submission, ECF No. 108, at 5 n.5), and his actual billable hours amounted to $134,500, which counsel represents was calculated by multiplying 270 billable hours by a $500 hourly rate, (*id.* at 4).[4] However, an independent review of the original billing records indicates that 269 billable hours were calculated at an hourly rate of $500, and one billable hour, used for "travel to and from court," was calculated at a one-half hourly rate of $250, resulting in billable hours of $134,750. (*Id.* Ex. A, at 4.)

In FLSA cases, "[r]ecent decisions within the Eastern District of New York approved hourly rates of $300 to $450 for partners, $200 to $300 for senior associates, and $100-$200 for junior associates, and $70 to $100 for support staff." *Gao v. Jian Song Shi*, No. 18-CV-2708 (ARR) (LB), 2021 WL 1949275, at *17 (E.D.N.Y. Apr. 30, 2021) (collecting cases), *report and recommendation adopted sub nom. Bin Gao v. ABC Corp.*, 2021 WL 1946322 (E.D.N.Y. May 15, 2021); *see also Diaz v. Rene French Cleaners, Inc.*, No. 20-

---

[3] Counsel indicates that "[a]s a courtesy to Mr. Morales," Counsel will "absorb those disbursements upon the Court's approval of the parties' settlement." (Supplemental Submission, ECF No. 108, at 5 n.5.)

[4] The Court notes that counsel's math does not quite add up, since 270 hours billed at an hourly rate of $500 should be $135,000.

CV-3848, 2022 WL 4646866, at *14 (E.D.N.Y. Aug. 29, 2022) (same), *report and recommendation adopted*, 2022 WL 4662247 (E.D.N.Y. Sept. 30, 2022); *Montanes v. Avanti Pizza 2 Inc.*, No. 21-CV-586 (ERK), 2022 WL 17820103, at *8 (E.D.N.Y. Oct. 20, 2022) (noting approximately the same rates), *report and recommendation adopted*, 2022 LEXIS 211094 (E.D.N.Y. Nov. 8, 2022); *Hong v. Mito Asian Fusion*, No. 19-CV-3149 (TAM), 2023 WL 3092722, at *4 (E.D.N.Y. Apr. 26, 2023) (same, excluding support staff).

Mr. Goldberg received his law degree from New York University in 1991 and has focused on labor and employment law since at least 1996, when he opened his own practice specializing in these matters. *See Wimbush v. L.I.C. Pet Transp. Inc.,* No. 16-CV-5363 (PAE) (KNF), 2017 WL 10299581, at *5 (S.D.N.Y. Aug. 25, 2017), *report and recommendation adopted in relevant part*, 2018 WL 3388296 (S.D.N.Y. July 12, 2018). Given Mr. Goldberg's level of experience and expertise, and in light of relevant caselaw, the Court concludes that a reasonable hourly rate for Mr. Goldberg is $450. *See, e.g.*, *Ethelberth v. Choice Sec. Co.,* No. 12-CV-4856 (PKC) (VMS), 2016 WL 11469536, at *11–12 (E.D.N.Y. Aug. 5, 2016) (explaining that, based on his "qualifications and approximately twenty-five years of experience litigating employment actions," an hourly rate of $400 for Mr. Goldberg was reasonable), *report and recommendation adopted*, 2016 LEXIS 114131 (E.D.N.Y. Aug. 23, 2016).[5] Indeed, "hourly rates of $400 or more are generally reserved

---

[5] Notably, in 2012 — four years before he was awarded the $400 fee in *Ethelberth* — Mr. Goldberg was awarded the same fee in another FLSA and NYLL matter. Order at 4, *Veerman v. Deep Blue Group L.L.C.*, No. 08-CV-5042 (WHP) (LAB) (S.D.N.Y. May 11, 2012), ECF No. 101. Given Mr. Goldberg's increased experience with the subject matter, the number of years that have passed since the awards in *Ethelberth* and *Veerman*, and recent inflation, the Court finds that an increased fee of $450 is reasonable. *See Almond v. PJ Far Rockaway, Inc.*, No. 15-CV-6972 (FB) (JO), 2018 WL 922184, at *2 (E.D.N.Y. Feb. 15, 2018) (justifying an increased fee for a particular attorney by explaining that "attorney's fees . . . increase in cost with inflation" and that "[the attorney]'s experience has grown since Judge Cogan observed that he would be entitled to $400 or more in a proper case").

for attorneys with extensive experience litigating wage and hour claims," like Mr.

Goldberg.[6] *Jacome v. Optical 49, Inc.*, No. 20-CV-2615 (DG) (PK), 2022 WL 1407194

(E.D.N.Y. Mar. 15, 2022), *report and recommendation adopted*, Apr. 18, 2022 ECF Order

Adopting R. & R.; *see also Lopez v. Ki Moon Rest. Corp.*, No. 17-CV-6078 (LDH) (RLM),

2021 WL 681710, at *2–3 (E.D.N.Y. Jan. 28, 2021) (awarding an hourly rate of $400 to a

founding partner of a wage and hour litigation firm who had 30 years of experience),

*report and recommendation adopted*, 2021 WL 681382 (E.D.N.Y. Feb. 22, 2021).

As to the hourly rate for travel, in light of the Court's above-recommended

billing rate and relevant caselaw, the Court finds that a one-half billing rate of $225 is a

reasonable travel rate. *See Aptive Env't LLC v. Village of E. Rockaway*, No. 19-CV-3365

(DRH) (SIL), 2022 WL 5434178 (E.D.N.Y. July 8, 2022) (recommending a 50% reduction

of the determined hourly rate for travel hours), *report and recommendation adopted*, No.

19-CV-3365 (JMA) (SIL), 2022 WL 4376618 (E.D.N.Y. Sept. 22, 2022); *Barfield v. N.Y.C.

Health & Hosps. Corp.*, 537 F.3d 132, 151 (2d Cir. 2008) (upholding a fee award which

calculated travel time at half the typical hourly rate).

2.  *Reasonable Number of Hours*

"When considering an application for attorneys' fees, the court should exclude

'excessive, redundant, or otherwise unnecessary' hours." *Rosen v. LJ Ross Assocs., Inc.*,

No. 19-CV-5516 (ARR) (VMS), 2022 WL 493728, at *6 (E.D.N.Y. Jan. 24, 2022) (quoting

---

[6] In support of his hourly rate, Mr. Goldberg cites a case in which a court awarded him a $500 hourly rate. (*See* Supplemental Submission, ECF No. 108, at 4 n.3 (citing as an example *Wimbush v. L.I.C. Pet Transport Inc. d/b/a Pet Chauffeur and David Lang*, No. 16-CV-5363, 2017 U.S. Dist. LEXIS 138208 (S.D.N.Y. Aug. 25, 2017), *adopted in part including as to attorneys' fees*, 2018 U.S. Dist. LEXIS 116376 (July 12, 2018)).) However, these awards were granted in the Southern District of New York. The "forum rule" dictates that when assessing an attorney's requested hourly rate, courts typically consider other rates "'employed in the district *in which the reviewing court sits*.'" *See Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174–75 (2d Cir. 2009) (emphasis added) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 119 (2d Cir. 2007)).

*Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)), *report and recommendation adopted*, 2022 WL 493274 (E.D.N.Y. Feb. 17, 2022). Alternatively, "in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (quotation marks omitted); *see also McDonald v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006) (reiterating that a court may use a percentage reduction "as a practical means of trimming fat from a fee application" (quotation marks omitted)); *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994) (remanding the case for reconsideration "because the recitation of reasons for accepting all of counsel's preverdict requests for fees suggests that the Magistrate Judge may have failed to critically examine these requests" but noting that "[w]e do not require that the court set forth item-by-item findings concerning what may be countless objections to individual billing items"); *De La Paz v. Rubin & Rothman, LLC*, No. 11-CV-9625 (ER), 2013 WL 6184425, at *4 (S.D.N.Y. Nov. 25, 2013) (adopting report and recommendation where the magistrate judge made an across-the-board reduction of fees by 30%).

In determining a reasonable number of hours, "[t]he relevant issue . . . is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992). Courts "must make 'a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended.'" *Hernandez v. Quality Blacktop Servs., Inc.*, No. 18-CV-4862 (RJD) (RML), 2021 WL 1413246, at *11 (E.D.N.Y. Mar. 10, 2021) (quoting *Maldonado v. La Nueva Rampa, Inc.*, No. 10-CV-8195 (LLS) (JLC), 2012 WL 1669341, at *13 (S.D.N.Y. May 14, 2012)). At the same time, as the *Fisher* court

observed, courts "'need not, and indeed should not, become green-eyeshade accountants'" when evaluating fee requests. *Fisher*, 948 F.3d at 601 (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)).

Plaintiff's counsel requests compensation for 270 billable hours, which raises the question of whether that represents a reasonable amount of time spent in this litigation. (*See* Supplemental Submission, ECF No. 108, at 4.) *See generally Grant*, 973 F.2d at 99–100 (discussing whether the district court's determination of the number of hours in calculating the lodestar was reasonable). While this amount could be considered excessive in a typical FLSA case, *see Hernandez*, 2021 WL 1413246, at *11, this case required an unusual level of litigation. Although the FLSA and NYLL claims in this action did not involve difficult or novel legal questions, the settlement agreement comes after more than five years of extensive litigation. During that time, Mr. Goldberg engaged in numerous rounds of default practice, (*see* Reqs. for Certificates of Default, ECF Nos. 9, 10, 13, 15, 29; Mot. for Default J., ECF No. 44; Entries of Default, ECF Nos. 11, 30), and sanctions motions practice, (*see* Mot. to Strike, ECF Nos. 22, 25, 50; Mot. for Sanctions, ECF No. 101), and attended 21 conferences totaling at least nine hours.[7] Mr. Goldberg also participated in mediation and a settlement conference before the Court. (*See* Nov. 23, 2021 ECF Mediation Report; July 6, 2023 ECF Min. Entry & Order.) While

---

[7] (*See* Oct. 25, 2018 ECF Min. Entry; Dec. 20, 2018 ECF Min. Entry; Jan. 4, 2019 ECF Min. Entry; Apr. 9, 2019 ECF Min. Entry; June 20, 2019 ECF Min. Entry; Dec. 20, 2019 ECF Min. Entry; May 12, 2020 ECF Min. Entry; July 16, 2020 ECF Min. Entry; Sept. 16, 2020 ECF Min. Entry; Nov. 4, 2020 ECF Min. Entry; Nov. 24, 2020 ECF Min. Entry; Jan. 4, 2021 ECF Min. Entry; Feb. 2, 2021 ECF Min. Entry; July 29, 2021 ECF Min. Entry & Order; Sept. 29, 2021 ECF Min. Entry & Order; Jan. 25, 2022 ECF Min. Entry & Order; Apr. 8, 2022 ECF Min. Entry & Order; Apr. 28, 2022 ECF Min. Entry & Order; May 19, 2022 ECF Min. Entry & Order; June 27, 2023 ECF Min. Entry; July 6, 2023 ECF Min. Entry & Order.) The Court arrived at nine hours for conferences by adding the length of each conference as reflected in the respective docket entries cited above. This calculation revealed that the conferences totaled 524 minutes, or 8.7 hours. However, the Court notes that because the November 24, 2020 and June 27, 2023 minute entries did not include timestamps, this number underestimates how much time Mr. Goldberg spent in conferences.

engaged in this protracted litigation, Plaintiffs and Mr. Goldberg were regularly subjected to Defendant Natale's obstructive behavior, which both complicated and significantly delayed the eventual resolution of the matter. (*See, e.g.*, R. & R., ECF No. 77, at 3–8 (recounting Natale's efforts to privately settle the case out of court by contacting Plaintiff Gerges directly); *id.* at 6 ("[G]iven Defendant Natale's direct contact with Plaintiff Gerges, and the Court's concerns that Mr. Gerges may have been pressured or intimidated by Defendant Natale to settle the lawsuit, the Court scheduled a follow-up conference on April 28, 2022 . . . .").).

In light of the extensive and arduous procedural history of this case, 270 hours of work over five years is not *per se* unreasonable. Nevertheless, the Court's independent review of the billing records reveals that Mr. Goldberg billed for clerical and administrative tasks, such as filing and serving documents, which are typically not recoverable at an attorney's rate. (*See* Supplemental Submission Ex. A, ECF No. 108, at 1–11.) *See generally Garcia-Severino v. TDL Restoration, Inc.*, No. 18-CV-11401 (CS), 2020 WL 7239678, at *4 (S.D.N.Y. Dec. 9, 2020) ("'Courts regularly reduce the rate billed by attorneys for work done on administrative or clerical tasks,' and '[a]ttorneys engaged in clerical tasks should not be compensated at the rate for clerical employees, or, if the task at issue is the type included in overhead, they should not be compensated at all.'" (quoting *Shabazz v. City of New York*, No. 14-CV-6417, 2015 WL 7779267, at *4 (S.D.N.Y. Dec. 2, 2015))). Indeed, Mr. Goldberg has previously been admonished for this very practice. *See Ethelberth*, 2016 WL 11469536, at *13 (recommending an across-the-board percentage cut on Mr. Goldberg's fee in part because he billed for clerical tasks).

Similarly, Mr. Goldberg has continued to "record[] time in quarter-hour increments, rather than the typically utilized six-minute increments," despite a prior admonition in *Ethelberth*. *Id.* Courts have found this method of billing excessive and

have cut fee requests that employed this practice as a result. *See Trustees of Loc. 813 Ins. Tr. Fund v. Bradley Funeral Serv., Inc.*, No. 11-CV-2885 (ARR) (RLM), 2012 WL 3871759, at *7 (E.D.N.Y. Aug. 10, 2012) ("[P]laintiff's counsel's method of billing tends to overstate the amount of time expended, since the firm divides the billed hours into fifteen-minute increments instead of the preferred six-minute increments."), *report and recommendation adopted*, 2012 WL 3871755 (E.D.N.Y. Sept. 4, 2012); *Lucky Brand Dungarees, Inc. v. Ally Apparel Res., LLC*, No. 05-CV-6757 (LTS) (MHD), 2009 WL 466136, at *4 (S.D.N.Y. Feb. 25, 2009) (emphasizing that recording time in quarter hour segments "adds an upward bias in virtually all cases" and is a practice that has "repeatedly been found improper and justifies some further conservatism in calculating the amount of compensable time").

Considering both the protracted litigation history and Mr. Goldberg's somewhat excessive billing, the Court concludes that the bill here includes some "fat," but not much. Based on these considerations, the Court recommends applying an across-the-board reduction of 20% to the 270 hours Mr. Goldberg billed to better calculate the number of hours that would be reasonable here.

3. *Overall Reasonableness of Mr. Goldberg's Billable Hours*

Using the Court's recommendations regarding a reasonable rate and reasonable hours for Mr. Goldberg, a lodestar cross-check suggests that a fee award as high as $97,200 would be reasonable given the highly unusual procedural history of this case.[8] Notably, however, Mr. Goldberg is not requesting the full value of his time on the matter; instead, he requests a fee totaling $32,000. Therefore, even if the Court "trims the fat" by reducing his billable hours by 20% *and* cuts his hourly rate to $450, the

---

[8] The Court arrived at this conclusion by multiplying the recommended hourly rate of $450 by 216 hours (80% of 270).

attorneys' fee included in the settlement agreement is still significantly less than the fee range that the Court finds reasonable using a lodestar cross-check. Specifically, Mr. Goldberg's anticipated attorneys' fee is approximately 33% of what the Court considers reasonable. For all of these reasons, the Court concludes that awarding Mr. Goldberg $32,000 in fees is appropriate and fair.

## CONCLUSION

In light of the foregoing, the Court respectfully recommends that Plaintiff's motion for settlement approval be granted.

\*   \*   \*   \*   \*

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g.*, *Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision" (quotation marks omitted)).

**SO ORDERED.**

Dated:  Brooklyn, New York
      November 13, 2023

_____
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE